UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DeANDRE D. HARRIS,<br><br>               Petitioner,<br><br>v.<br><br>TERRY ROYAL, *et al.*,<br><br>               Respondents. | Case No. 2:22-cv-00661-ART-NJK<br><br>ORDER |

**I.   Summary**

DeAndre Dwayne Harris, an individual incarcerated at Nevada's Ely State Prison, represented by appointed counsel, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Before the Court is Respondents' motion to dismiss. The Court will grant the motion to dismiss on the ground that Harris's petition is barred by the statute of limitations.

**II.   Background**

The Nevada Supreme Court described the facts underlying the case as follows:

> Laci Thornton and four friends were involved in a fistfight outside of a party. Thornton returned to her apartment and told her boyfriend, appellant Deandre Dwayne Harris, what had occurred. Harris became angry and demanded to be taken to the party. Two of Thornton's friends drove with him to the party. Harris knocked on the door, demanded to speak to whomever had assaulted his girlfriend, and was rebuffed—party guests slammed the door in his face. Harris then fired a gun through the door killing the victim.

(ECF No. 10 at 134.)

On April 22, 2011, following a jury trial in Nevada's Eighth Judicial District Court (Clark County), Harris was convicted of murder with use of a deadly weapon and discharging a firearm at or into a structure. (ECF Nos. 29-3, 29-4 (jury verdicts); ECF No. 29-6 (judgment of conviction).) Harris was sentenced, for

1

the murder, to 50 years in prison with the possibility of parole after 20 years plus a consecutive term of 20 years with a minimum parole eligibility of eight years for the use of a deadly weapon. (ECF No. 29-6 at 3.) For discharging a firearm at or into a structure, Harris was sentenced to 72 months in prison with a minimum parole eligibility of 28 months, consecutive to the sentence for the murder. (*Id.*) Harris appealed, and the Nevada Supreme Court affirmed on January 12, 2012. (ECF No. 10 at 134–35.)

More than eight years later, on August 7, 2020, Harris filed a *pro se* post-conviction petition for writ of habeas corpus in the state district court. (ECF No. 33-2.) The state district court denied Harris's petition on April 2, 2021, determining that it was barred by the applicable state-law statute of limitations and that Harris did not show cause and prejudice to overcome the procedural bar. (ECF No. 29-15.) Harris appealed, and the Nevada Court of Appeals affirmed on December 1, 2021. (ECF No. 29-20.)

This Court received Harris's *pro se* federal petition for writ of habeas corpus for filing, initiating this case, on April 21, 2022. (ECF Nos. 1-1, 10.) Harris's signature on the petition is dated December 20, 2021, and, for purposes of this motion, the Court considers the petition to have been filed on that date.

The Court granted Harris's motion for appointment of counsel and appointed counsel (ECF No. 9), and, with counsel, Harris filed an amended habeas petition on October 23, 2023. (ECF No. 23.) Respondents filed their motion to dismiss on May 28, 2024, arguing that all Harris's claims are barred by the statute of limitations, that one of Harris's claims is unexhausted in state court, and that one of Harris's claims is procedurally defaulted. (ECF No. 31.) Harris filed an opposition to the motion to dismiss (ECF No. 36), and Respondents filed a reply (ECF No. 43). The Court granted Respondents leave to file a supplement to their reply (ECF No. 46), and Respondents filed the supplement to their reply on March 4, 2025. (ECF No. 47.) Harris filed a response to the

supplement to the reply on March 14, 2025. (ECF No. 48.) The Court held a hearing on the motion to dismiss to address the issue of equitable tolling on March 24, 2025. (ECF No. 50.)

### III. Discussion - Statute of Limitations

The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted in 1996, established a one-year statute of limitations for federal habeas petitions filed by prisoners challenging state convictions or sentences; the statue provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. 2244(d)(1). The AEDPA statute of limitations is tolled during the time that a "properly filed" application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). Also, a petitioner may be entitled to equitable tolling of the one-year AEDPA limitations period if he shows that he diligently pursued his rights but some extraordinary circumstance stood in his way. *Holland v. Florida*, 560 U.S. 631, 645 (2010).

In this case, the Nevada Supreme Court filed its order affirming the judgment of conviction on January 12, 2012. (ECF No. 10 at 134–35.) Harris did

not petition the United States Supreme Court for certiorari review, so his conviction became final 90 days later, on April 11, 2012, and his AEDPA limitations period then began to run. *See Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999) (if no petition for certiorari is filed, direct review is considered final 90 days after the decision of the state's highest court). Therefore, without any tolling, the AEDPA limitations period expired a year later, on April 11, 2013.

Harris did not file his state habeas petition until August 7, 2020. (ECF No. 33-2.) That petition did not toll the AEDPA limitations period for two reasons. First, it was not initiated until more than seven years after the AEDPA limitations period had already expired. Second, the Nevada courts ruled it barred by the state-law statute of limitations, so it was not "properly filed" within the meaning of section 2244(d)(2) (tolling only for "a properly filed application for State post-conviction or other collateral review...."). *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

Therefore, this federal habeas action, initiated December 20, 2021, was initiated over eight years after the AEDPA limitations period expired on April 11, 2013. Harris concedes as much, but he claims he is entitled to equitable tolling. (*See* ECF No. 36 at 4 ("Although Harris' federal petition is untimely, Harris is entitled to equitable tolling."); *id.* at 5 ("Harris agrees his petition [is] late (by approximately 9 years). However, Harris is entitled to equitable tolling.").)

Equitable tolling is appropriate only if the federal habeas petitioner can show that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland*, 560 U.S. at 649. To satisfy the first element, the petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing." *Smith v. Davis*, 953 F.3d 582, 598–99 (9th Cir. 2020). To satisfy the second element, the petitioner must show that

"extraordinary circumstances" were the cause of his untimeliness. *Grant v. Swarthout*, 862 F.3d 914, 926 (9th Cir. 2017). In other words, the petitioner "must show that some external force caused his untimeliness, rather than mere oversight, miscalculation or negligence." *Velasquez v. Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (internal quotation marks omitted). "[E]quitable tolling is unavailable in most cases." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). And "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (alteration in original) (internal quotation marks omitted). The petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." *Id.* at 1065.

Harris argues that he should receive equitable tolling—over eight years' worth—because of misconduct of his trial and appellate counsel and because of the COVID 19 pandemic. (*See* ECF No. 36 at 4–14.) Specifically, Harris primarily argues that he was abandoned by his trial counsel, Michael Sanft, who also represented him on appeal, that Sanft never told him that his direct appeal was rejected in 2012, and that, as a result, he did not learn of the conclusion of his direct appeal until early 2020. (*Id.*)

At Harris' sentencing hearing, there was confusion about who would represent Harris on appeal. (*See* ECF No. 36 at 5–6; ECF No. 33-1 at 22–23.) Sanft told the court he would file a notice of appeal on Harris's behalf but then would file a motion to withdraw. (*Id.*; *see also* ECF No. 10 at 101–02.) Harris alleges that Sanft asked him to be patient about his direct appeal, told him that his appellate counsel would need adequate time to review the trial court record, and told him that his appellate counsel would contact him. (ECF No. 36 at 6; ECF No. 10 at 141–42.)

Harris alleges, and proffers evidence to show, that he never heard from Sanft or any other attorney regarding his direct appeal or its conclusion, and that

5

he only learned of the conclusion of his direct appeal in early 2020, as a result of his inquiries with the assistance of another inmate. (ECF No. 36 at 6; *see also* ECF No. 37-3 at 2.)

Harris alleges that in late 2019—apparently December of that year—he met another inmate, Toney White, who began to help him determine the status of his appeal and ultimately initiate his state habeas action. (ECF No. 36 at 6–8; *see also* ECF No. 37-3 (declaration of Toney White).) Harris submits a declaration of White, and in that declaration White states that Harris had difficulty understanding basic legal terms and processes and needed help to obtain records regarding his appeal. (ECF No. 36 at 6; *see also* ECF No. 37-3 at 2.)

White also states in his declaration that he "requested the [prison] mail log to verify if [Harris] had received any correspondence from attorney Michael Sanft, the 8th Judicial District Court, the Attorney General's office or the Nevada Supreme Court," and that the prison logs he received showed that Harris never received any legal documents pertaining to his case before Harris met White. (ECF No. 37-3)

After Harris met White, acting with White's assistance, Harris wrote a letter to the Clerk of the Nevada Supreme Court dated February 24, 2020, and a follow-up letter dated April 5, 2020, requesting a copy of the docket for his appeal. (ECF No. 36 at 6–7; *see also* ECF No. 10 at 84, 88; ECF No. 37-3 at 2.)

Also with White's assistance, Harris wrote a letter to Sanft, dated March 1, 2020, asking Sanft to update him about the status of his appeal and asking for a complete copy of his file, but Sanft did not respond. (ECF No. 36 at 6–7; *see also* ECF No. 10 at 153–55; ECF No. 37-3 at 2) On May 29, 2020, Harris filed in the trial court a motion in which he sought to compel Sanft to provide him a copy of his file. (ECF No. 36 at 7; ECF No. 10 at 141–46.)

Harris wrote another letter to the Clerk of the Nevada Supreme Court dated June 9, 2020, requesting copies of certain of the filings in his appeal and asking

6

who was receiving notices regarding his appeal. (ECF No. 36 at 7; ECF No. 10 at 99–100.)

Harris alleges that while he was attempting to ascertain the status of his appeal, obtain a copy of his file, and prepare a state post-conviction petition, the prison where he and White were incarcerated went into lockdown because of COVID 19, limiting and delaying their access to the law library and legal materials. (ECF No. 36 at 7–8; *see also* ECF No. 37-3 at 3.)

It appears that Sanft never responded to any of Harris and White's inquiries, but with White's assistance, sometime in early 2020 it appears, Harris finally learned that Sanft had in fact handled his appeal, and that his appeal had concluded more than eight years earlier. White states in his declaration that he then "did his best" to prepare and file Harris's state petition, and it was filed on August 7, 2020. (ECF No. 36 at 8; *see also* ECF No. 33-2; ECF No. 37-3 at 3.)

Attorney abandonment can be an extraordinary circumstance warranting equitable tolling provided that the petitioner was also diligent. The Ninth Circuit Court of Appeals' holding in *Gibbs v. Legrand*, 767 F.3d 879 (9th Cir. 2014), is instructive. In *Gibbs*, much like in this case, the petitioner's attorney, who was appointed to represent the petitioner on the appeal from the denial of his state post-conviction petition, failed to inform the petitioner of the conclusion of that appeal. *See Gibbs*, 767 F.3d at 882–85. Citing *Holland* and *Maples v. Thomas*, 565 U.S. 266 (2012), as well as its own precedent, the court held that the attorney's failure to communicate with the petitioner and notify him of the conclusion of the appeal was egregious misconduct amounting to client abandonment, and that it was an extraordinary circumstance obstructing the petitioner's ability to file his federal habeas petition, satisfying the second requirement of the *Holland* analysis. 767 F.3d at 882, 885–89. For purposes of analysis of this equitable tolling issue, the Court accepts as true Harris's allegation that his attorney did not communicate with him regarding his appeal and did not inform him of the

conclusion of the appeal, and, applying the holding in *Gibbs,* the Court determines that Harris's attorney's failures were egregious misconduct, amounting to client abandonment, and constituting an extraordinary circumstance obstructing Harris's ability to file his federal habeas petition, satisfying the second element of the equitable tolling analysis set forth in *Holland.*

Therefore, the determinative issue here is the first requirement of the *Holland* analysis, that is, whether Harris pursued his rights diligently. This is where this case is different from *Gibbs*. In *Gibbs*, during the time in question, the petitioner wrote to his counsel three times expressing frustration with counsel's failure to communicate with him, and then lodged a complaint against his counsel with the state bar. 767 F.3d at 883. After the bar complaint was resolved and counsel told the petitioner he would keep him informed, the petitioner wrote to his counsel at least four more times but did not receive any reply. *Id*. The petitioner then wrote to the state supreme court requesting the docket sheet for the appeal and to the state bar trying to get in touch with his counsel. *Id*. Finally, the petitioner received the docket sheet and learned that his appeal had been rejected six months earlier. *Id*. The petitioner then had his sister obtain his files from his counsel, and he subsequently filed his federal habeas petition, 193 days after the expiration of the AEDPA limitations period. *Id*. at 884. The court in *Gibbs* held that the petitioner "acted with reasonable diligence both before and after learning of the Nevada Supreme Court's decision, thereby satisfying the first prong of the Holland equitable tolling inquiry." *Id*. at 893.

In contrast to the efforts of the petitioner in *Gibbs*, in this case Harris concedes that after his sentencing he did nothing to find out who represented him on appeal or what the status of that appeal was until more than eight years later, after he met White. During that time, Harris did not call Sanft; he did not write to Sanft; he made no attempt to contact the trial court; he made no attempt to contact the Nevada Supreme Court; he did not seek assistance from another

inmate; and he did not make any use of prison law library resources to ascertain the status of his appeal. The Court finds that Harris did not act reasonably diligently, within the meaning of *Holland* and *Smith*, between his sentencing hearing on March 31, 2011, and December 2019, when he met White, and that Harris is therefore not entitled to equitable tolling during that period.

White states in his declaration that he "noticed it was very difficult for Mr. Harris to understand what I was asking or explaining," and that "Harris does not comprehend basic legal terms or processes." But Respondents proffer evidence indicating that, during the eight years in question, Harris submitted kites, grievances, requests regarding educational, vocational, and religious matters, and applications for a birth certificate and social security card. *See* ECF Nos. 37-1, 37-2. Perhaps most notably, Respondents proffer evidence that during the time in question Harris submitted four applications to the Board of Pardons for relief from his sentence (*See* ECF No. 37-1 at 4, 7, 8, 9.) The Court finds that Harris does not show that he was unable to take some action during the time in question to find out who represented him on appeal or what the status of that appeal was.

Harris argues generally that he acted with reasonable diligence (*see* ECF No. 36 at 12–14); but Harris only makes that argument with respect to the period after he met White. (*See* ECF No. 36 at 12 ("Once Harris was able to obtain the assistance of another inmate, he was diligent."); *id.* at 14 ("he was diligent once the extraordinary circumstance was lifted"). That, though, is not enough. A petitioner requesting equitable tolling "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith*, 953 F.3d at 598–99.

Harris argues that after he met White and while he and White were attempting to ascertain the status of his appeal and prepare a state habeas petition, the prison went into lockdown because of the COVID 19 pandemic,

limiting their access to the law library and legal materials, and delaying the filing of his state habeas petition, and in turn apparently his federal habeas petition. ECF No. 36 at 7–8. The Court finds that Harris and White's efforts to file Harris's state and federal petitions were obstructed by the circumstances at the prison during the COVID 19 pandemic and that Harris acted diligently at all times after he met White. But that does not help Harris. By the time Harris met White, the AEDPA limitations period had already expired long before, and his federal habeas petition was already barred by the AEDPA statute of limitations.

In short, Harris does not show equitable tolling to be warranted for enough time to render his federal petition timely. The Court will grant Respondents' motion to dismiss on statute of limitations grounds and will dismiss this action. The Court need not reach the other arguments asserted by Respondents regarding exhaustion and/or procedural default of certain of Harris's claims.

**IV.   Certificate of Appealability**

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000). Applying the standard articulated in *Slack*, reasonable jurists would not find debatable the Court's ruling that this action is

1 barred by the statute of limitations. The Court will deny Harris a certificate of
2 appealability.

### V. Orders

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 31) is granted. This action is dismissed.

It is further ordered that Petitioner is denied a certificate of appealability.

It is further ordered that the Clerk of the Court is directed to enter judgment accordingly and close this case.

It is further ordered that, pursuant to Federal Rule of Civil Procedure 25(d), Terry Royal is substituted for Jeremy Bean as the respondent warden. The Clerk of the Court is directed to update the docket to reflect this change.

Dated this 31st day of March 2025.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

11